

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

**ENTERED**
**03/28/2008**

| | | |
|---|---|---|
| IN RE: | § | |
| ATRAVASADA LAND AND CATTLE | § | CASE NO: 80-01039 |
| INC | § | |
|     Debtor(s) | § | |
| | § | CHAPTER  11 |
| | § | |
| MESTENA, INC, *et al* | § | |
|     Plaintiff(s) | § | |
| | § | |
| VS. | § | ADVERSARY NO. 07-2013 |
| | § | |
| ATRAVASADA LAND AND CATTLE | § | |
| COMPANY, INC, *et al* | § | |
|     Defendant(s) | § | |

## MEMORANDUM OPINION ON MOTION FOR SUMMARY JUDGMENT

On this day came on for consideration the Traditional Motion for Summary

Judgment filed by the Plaintiffs, MESTENA, INC. and MESTENA UNPROVEN, LTD.

(collectively "Mestena" or "Plaintiffs"), against Glenn Westergren and the Risken Family

Trust (the "Risken Defendants") and Atravasada Land and Cattle Company, as Debtor,

Debtor in Possession, and post-confirmation Revested Debtor, (the "Debtor") by and

through Gary Knostman (deceased) (the "Trustee Defendant") to declare the validity of

Plaintiffs' title purchased and acquired from the Debtor by court-approved special

warranty deed to certain mineral interests received by order of this bankruptcy court (the

"Mineral Properties"). The Court, having heard the arguments of counsel, and having

reviewed the pleadings and briefs on file herein, and the summary judgment evidence,

finds that there are no genuine issues of material fact, that the Risken Defendants failed to

provide summary judgment evidence to contradict Plaintiffs' allegations, and summary

judgment should be granted in favor of Plaintiffs.

# I. JURISDICTION

This Court has previously found that it has "core" subject matter jurisdiction by its Order Denying First Amended Motion To Dismiss And First Amended Motion to Abstain (the "Jurisdiction Order"), entered July 24, 2007.

# II. UNCONTROVERTED FACTS

## A. Atravasada's Bankruptcy and Harry Risken's Fraud

During the years preceding 1980, Atravasada Land & Cattle, Inc. ("Atravasada" or the "Debtor") was in the business of buying and selling tracts of land, subdividing the tracts of land, selling the tracts of land on Contracts of Sales and Deeds, all while reserving some or all of the mineral rights on these tracts of land. During this time, Harry Risken was the President and 95% owner of Atravasada.

On June 30, 1980, (the "Petition Date") Atravasada filed a Chapter 11 voluntary petition in the United States Bankruptcy Court for the Southern District of Texas, Laredo Division. At the time of the filing of the Chapter 11, Atravasada owned, and held record title to, 100% of the minerals comprising the Mineral Properties made the basis of this Adversary Proceeding.

On March 27, 1981, Gary Knostman was appointed Chapter 11 Trustee (the "Bankruptcy Trustee") as a result of the actual fraud, both pre-petition and post-petition, of the Debtor's principal owner, officer and director, Harry Risken. On March 15, 1982, Harry Risken, the now dispossessed ex-president and ex-director of the Debtor, filed of record in Jim Hogg County a Mineral Deed purportedly dated February 20, 1979, (the "Risken Mineral Deed") by which the Debtor's interest in the Mineral Properties was

allegedly transferred to himself. This filing was done without the knowledge of the Bankruptcy Trustee and without Court authority.

On July 2, 1982, within four (4) months of the Risken Mineral Deed recording, Harry Risken was sentenced for bankruptcy fraud for knowingly "concealing monies in [bankruptcy] proceeding belonging to estate." *See* United States District Court Docket Sheet (Southern District of Texas), *USA vs. Harry Risken*, C-82-91.  As a condition of his sentencing and probation, Risken agreed to cooperate with the FBI and Bankruptcy Trustee in divulging assets of Atravasada.

On July 27, 1982, the Risken Family Trust was formed with Ruth Risken as "Settlor", naming W.C. McDaniel as the initial trustee (referred to herein as "Risken Family Trust" or "Trust"). Included as the Trust's corpus was certain real property, mineral interests in Kleberg County, and the 950 shares of stock in Atravasada that Harry Risken claimed ownership of on the Petition Date. Instead of cooperating with the Bankruptcy Trustee to return assets to the estate in compliance with his probation terms, within a few months of his sentencing and formation of the Risken Family Trust, Harry Risken purported to transfer the title to the Mineral Properties from himself to the Trust by an un-recorded mineral deed dated November 10, 1982, (the "Trust Mineral Deed").

The Risken Family Trust held the Trust Mineral Deed for seven (7) years without recording it, until, on November 20, 1989, the Risken Family Trust filed the Trust Mineral Deed of record in Jim Hogg County. The Trust Mineral Deed constitutes the sole claim to any rights of the Risken Defendants in the Mineral Properties.

**B. The First Adversary Proceeding**

On November 23, 1982, Atravasada's Bankruptcy Trustee, Gary Knostman, filed an adversary proceeding in the main bankruptcy case, *Atravasada Land & Cattle, Inc. vs. Harry Risken*, Adversary No. 82-2101-H3, against Risken (the "First Trustee Adversary") to recover assets that Mr. Risken was stripping and concealing from the estate, including the Mineral Properties. The First Trustee Adversary alleged that Risken was fraudulently transferring mineral interests and other assets from Atravasada to himself in an attempt to avoid the creditors of the bankruptcy proceedings.

The Bankruptcy Trustee also filed a notice of lis pendens (the "Lis Pendens") in the lis pendens records of Jim Hogg County on November 30, 1982, reciting as the pending legal proceedings forming the basis of the estate's claim to title both: (i) the First Trustee Adversary (Adversary 82-2101-H3) then pending; and (ii) the pending Chapter 11 bankruptcy case, by name and docket number [No. 80-01039 (the "Main Case")]. On November 20, 1989, seven years after the recording of the Lis Pendens, the Risken Family Trust recorded their deed to the Mineral Interest for the first time in the mineral records of Jim Hogg County, Texas, and thereby caused the alleged transfer of Mineral Properties to the Trust.

On February 11, 1987, the First Trustee Adversary was dismissed for want of prosecution. The Lis Pendens was never released of record nor was the reference in the Lis Pendens to the on-going and pending Bankruptcy Case and claim of the bankruptcy estate of the Debtor to the Mineral Properties modified or released.

**C. Mestena's Purchase of the Mineral Properties**

On April 26, 1990, Mr. George E. Tanner, then Vice President of Mestena, sent a letter to Atravasada's Bankruptcy Trustee, Gary Knostman, expressing an interest in purchasing minerals in Jim Hogg County, Texas, which were owned by the estate of Atravasada on the Petition Date.  In that letter, Mestena offered to pay Atravasada $120 per net mineral acre, or a total of $27,300.00, for the 227.5 net mineral acres owned by Atravasada's bankruptcy estate.

On October 1, 1990, George E. Tanner of Mestena wrote a second letter to the Bankruptcy Trustee regarding the purchase. On November 1, 1990, the Bankruptcy Trustee accepted the offer, subject to notice and Bankruptcy Court approval. The Trustee forwarded a Special Warranty Mineral Deed to his attorney, Harrell Z. Browning for review on January 8, 1991. Because Browning believed that notice and a hearing was preferable for the contemplated §363 sale of the Mineral Properties, the United States Trustee and the Bankruptcy Trustee entered into a Stipulation To The Appointment of Chapter 7 Trustee And For Limited Order Authorizing The Trustee to Operate the Business of the Debtor For the Sole Purpose of Consummating a Pending Sale of Estate Property. Notice was provided to all parties on the Debtor's service list. On April 29, 1991, the case was re-converted to chapter 11. On June 14, 1991, Gary Knostman was appointed chapter 11 trustee (the "Trustee").

The United States Trustee and Gary Knostman jointly petitioned the Court, as noticed to all creditors, to allow the sale of the 227.5 net mineral acres to Mestena, reiterating the Trustee's representation that "such sale [was] in the best interest of the estate." On May 20th, 1991, the Risken Defendants through their attorney Sam

Westergren [signing the pleadings as the Attorney for (i) the Risken Family Trust and (ii) Glenn Westergren, Sole Successor Beneficiary of said Trust (Harry Risken died July 28, 1990 and his son Glenn Risken Westergren, inherited as the successor to the trust interest and the Atravasada stock)] filed written objections to the proposed § 363 First Sale Order, seeking the relief of (i) opposing the sale of the 227.5 acres to Mestena (as priced too low) and (ii) a continuance of the hearing then scheduled.

Pursuant to the Risken Defendants' request for a continuance, the § 363 sale was re-set for hearing on September 6, 1991. After the continuance was granted the Risken Defendants, through their attorney Sam Westergren,  were active in their objection, including engaging in discovery requests and sending Interrogatories to the Bankruptcy Trustee regarding the 227.5 net mineral acres to be sold to Mestena. As a result of the Risken Defendants' objection to the insufficiency of price, Mestena increased its offer by approximately 60%.

On August 2, 1991, The Risken Defendants objected to the proposed sale only on grounds of insufficient consideration for the purchase by Mestena of the Mineral Properties.  All Risken Defendants remained silent regarding any controversy over ownership of the Mineral Properties by the Debtor. They were content to obtain the relief they sought (the increased purchase price which directly benefited the estate and their eventual claims to the residual estate) without ever disclosing to Mestena, the bankruptcy trustee, or the Bankruptcy Court that they had, two years prior, recorded a 7- year-old mineral deed from Harry Risken to the Risken Family Trust, covering the same Mineral Properties. As a result of the Risken Defendants' objection to the insufficiency of price, Mestena increased its offer by approximately 60%.

None of the Risken Defendants ever notified the Trustee, Mestena, nor this Bankruptcy Court in the First Sale Order matter that while using the Bankruptcy proceeding to further their interests and obtaining relief on their pleadings, they secretly claimed to be the owners of the Mineral Properties that the estate was then authorized to transfer. The parties were bound to announce to the Court any contrary position on the title and ownership of the *res* of the dispute, but instead remained silent.

At the hearing on the Motion to Sell the Mineral Property to Mestena, Sam Westergren, as counsel for both Glenn Risken Westergren and the Risken Family Trust withdrew his objections and consented to the sale of the Mineral Property to Mestena for the amount of $45,500, resulting in the First Sale Order.

Mestena, the Bankruptcy Trustee, and the Risken Defendants stipulated, and the Court's First Sale Order confirmed, that the sale was of 227.5 "net mineral acres." Thus, the First Sale Order provides that 100% of the interest owned by the Bankruptcy Trustee in each mineral acre was purchased by Mestena.  This Court ordered sale of the Mineral Properties to Mestena pursuant to § 363 of the Bankruptcy Code, free of all claims or interests of Harry Risken and the Risken Trust.

No appeal was ever taken from the First Sale Order. The Risken Family interests participated and encouraged the sale. No stay, or even a request to stay the First Sale Order was ever filed in the bankruptcy case. No proceeding has ever been brought by any party in interest to this First Sale Order to set aside the transfer accomplished by this Court's order and the subsequent Mineral Deed.

This Bankruptcy Court had jurisdiction to enter the First Sale Order. The Risken Family Trust, Glen Risken Westergren, the Bankruptcy Trustee, and Mestena were all parties to the proceeding, resulting in the First Sale Order which provided as follows:

i.      the Risken Family Trust appeared through its counsel Sam Westergren in person and through pleadings seeking affirmative relief; and

ii.     Glenn Risken Westergren, claiming 95% of the debtor's common stock as the sole beneficiary of the Risken Family Trust appeared through his counsel Sam Westergren, and through pleadings seeking affirmative relief; and

iii.    Gary Knostman, the Bankruptcy Trustee, appeared through counsel and pleadings, seeking affirmative relief; and

iv.    Mestena, the purchaser of the Mineral Properties appeared in the proceedings, through counsel seeking affirmative relief.

Thus, upon the finality of this First Sale Order pursuant to section 363 of the Bankruptcy Code, every party that could have or should have made claims of title to the Mineral Properties sold was before this Bankruptcy Court at the time the First Sale Order became a final, non-appealable order of this Bankruptcy Court.

The First Sale Order specifically provides that Mr. Glenn Westergren "no longer opposes the sale and [is] of the opinion that the sale is in the best interest of the estate." Counsel for Glenn Westergren and the Risken Family Trust, Sam Westergren, further signed the First Sale Order acknowledging his approval of the sale of the 227.5 net mineral acres to Mestena on behalf of the Risken Defendants. The First Sale Order further states that it is "ORDERED, ADJUDGED and DECREED that the Trustee is authorized to consummate the sale of the estate's interest in the 227.5 net mineral acres owned by the estate in Jim Hogg County to Mestena, Inc. for the sum of $45,500.00."

On November 27, 1991, two days after the hearing, Atravasada, by its Trustee,

Gary Knostman, executed a Special Warranty Mineral Deed transferring the Mineral Properties to Mestena and consummating the sale. On December 13th, 1991, Mestena filed the Mineral Deed reflecting the sale from Atravasada, in the Deed Records of Jim Hogg County, Texas recorded in Volume 151, Pages 51-54 of the Deed Records of Jim Hogg County. The Deed states that "This Mineral Deed is executed by Grantor named above pursuant to that certain Order of The United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division, signed by the United States Bankruptcy Judge on November 25, 1991 in Cause No. 80-01039-C (Chapter 11)."

Shortly after the First Sale Order, and after Mestena received its special warranty deed conveying the Mineral Properties and recorded the deed, Mestena took physical possession of the Mineral Properties, posting the surface of the property with signs showing its right to ingress and egress over the surface as a mineral interest owner – something Mestena has done for the 14 years prior to the state court suit brought by the Risken Family Trust and Glenn Risken Westergren in 2005. After the delivery of the Mineral Deed, Mestena never again participated in any respect in the Atravasada bankruptcy case.

**D. The Risken Defendants' Subsequent Conduct**

Subsequent to the First Sale Order, Glenn Westergren and the Risken Family Trust repeatedly confirmed and admitted in pleadings filed before this Court that the estate had sold the Mineral Interest described as 227.5 net mineral acres in Jim Hogg County to Mestena for $45,500.00:

(i) The initial Disclosure Statement filed by Plan Proponent Glenn Westergren, on January 14, 1992, makes the following disclosure:

> [Mr. Westergren] consented to the sale of [the mineral interests in Jim Hogg]
> for the total amount of $45,500, as evidenced by the Order of the Court, filed on
> November 26, 1991, and attached hereto as Exhibit 'B.' Accordingly, Trustee
> has been authorized to sell certain mineral interests of the Debtor Company
> located in Jim Hogg County, Texas for the amount of $45,500.

--Page 5, Disclosure Statement of Atravasada Land & Cattle, Inc. Submitted By Glenn
Westergren, Proponent An Interested Party.

The Risken Defendants further attached a copy of the First Sale Order to their Disclosure

Statement as "Exhibit B."

        (ii) On June 2, 1992, Glenn Westergren filed a Modified Disclosure

Statement, which used the same language provided in the initial disclosure statement. A

copy of the First Sale Order was attached as an Exhibit. *See* Modified Disclosure

Statement Filed On Behalf Of Atravasada Land And Cattle, Inc. by Glenn Westergren,

An Interested Party.

        These actions and statements were made by the Risken Defendants, as part of the

Debtor's (and its insiders on behalf of the Debtor) plan confirmation process at a time

when they had a legal duty and obligation as plan proponent, to inform the Court,

Creditors, and parties in interest, of the facts relevant to any proposed Chapter 11 Plan.

The Debtor was obligated to provide adequate information to creditors accurately

reflecting the assets and the transactions of the Debtor, particularly transactions with

insiders of the Debtor. No disclosure was made by the Risken Defendants, either through

the Disclosure Statements or the Plan of Reorganization, that the Mineral Properties

would be claimed by the Debtor or the Risken Defendants, or that an action would be

filed to recover the Mineral Properties from Mestena in a subsequent state or federal

action, or that any issue of the ownership of the Mineral Properties existed that would be

litigated post-confirmation.

The Motion to Set Aside or for Rehearing on Court's Rulings on Trustee's Motion to Pay Secured Creditors and Motion for Reimbursement of Administrative Expenses, filed by Risken Defendant Glen Westergren, states:

> [t]he source of funds for both rulings of the court pertain to the sale of mineral interests owned by the debtor company which realized a net amount in excess of $45,000.00.

### E. The Second Adversary Proceeding Against the Risken Family Trust

On April 24, 1992, upon discovery by the Bankruptcy Trustee that the Risken Family Trust had recorded deeds to mineral interests (secretly recorded by Harry Risken post-appointment of the Bankruptcy Trustee), Atravasada's Bankruptcy Trustee filed a second adversary proceeding in the main bankruptcy case against the Risken Family Trust, (the "Second Trustee Adversary") entitled "Complaint for Judgment of Contempt and for Damages" [Adversary Proceeding No. 92-2066-C, Docket No. 1]. The Second Trustee Adversary alleged that subsequent to the filing of the bankruptcy petition,  Harry Risken transferred title to mineral assets to himself and then to the Risken Family Trust and that at all times during these transfers "the Risken Family Trustee or the person acting on behalf of the Risken Family Trust knew that the debtor corporation was in a bankruptcy proceeding."

The Second Trustee Adversary, like the first, sought to set aside all of Harry Risken's theft of estate assets, so that they might be returned to the estate. While the Second Trustee Adversary includes a request to set aside any transfer of the Mineral Properties, there is no indication that the Trustee realized that the Mineral Properties were the same as those which had been sold to Mestena. On September 1, 1992, the First

Adversary proceeding against Harry Risken (which was originally dismissed for want of prosecution) was reopened. Mestena was not a party to either of the Trustee's Adversary.

**F. Plan Confirmation**

The Trustee filed his original Plan of Reorganization and Disclosure Statement on November 25, 1991. The Trustee's First Amended Disclosure Statement was filed January 13, 1992. Glenn Westergren filed his Plan of Reorganization and Disclosure Statement on January 14, 1992. The court approved Glenn Westergren's Disclosure Statement by order entered March 31, 1992. The Trustee filed his Second Amended Plan of Reorganization and Disclosure Statement on April 2, 1992. The Trustee's Disclosure Statement was approved by Revised Order entered April 16, 1992. A hearing was held on May 18, 1992, at which time the court instructed the parties on the procedure to be used for noticing both plans of reorganization to creditors.

Glenn Westergren filed a Modified Plan of Reorganization and Disclosure Statement on June 2, 1992. The Modified Disclosure Statement refers to the sale of Mineral Interests to Mestena for $45,500.00 and requests that the proceeds be listed in the cash section of assets on the disclosure. The Modified Disclosure Statement does not contain any disclosure that the Glenn Westergren or the Risken Family Trust claimed ownership to the Mineral Interests. An Order Approving Disclosure Statement of Glenn Westergren was entered on June 8, 1992.

The hearing on plan confirmation was held on June 25, 1992, at which time the court considered the competing plans. The Court entered its Order Confirming the Trustee's Plan of Reorganization (the "Confirmation Order") on August 13, 1992. Glenn Westergren appealed the Confirmation Order. On appeal, the District Court remanded the

case to bankruptcy court for consideration of Glenn Westergren's objection to the Trustee's disclosure statement. On remand, this Court approved the Trustee's disclosure statement by order entered September 6, 1994. No further appeal occurred and the confirmation Order became final.

## G. The Compromise Agreement

Over two years after this Court ruled on plan confirmation, the Trustee and the Risken Defendants reached a compromise and presented an Agreed Final Judgment, which was entered on January 17, 1995 (the "Agreed Judgment"). The Agreed Judgment purported to resolve all pending claims between Atravasada's bankruptcy estate, Glenn Westergren, the Risken Family Trust, and the estate of Harry Risken, and purported to divide between the Debtor's estate and the Risken Family Trust certain mineral interests then held "in the name of Harry Risken, the Risken Family Trust or Atravasada Land & Cattle Company, Inc." The Agreed Order does not mention the prior First Sale Order. The Agreed Order was never noticed to Mestena and Mestena was not a party to the negotiations or the order.

The Agreed Judgment purported to transfer the following described mineral interests:

> ". . . as to the following described mineral interests <u>in the name of Harry Risken, the Risken Family Trust or Atravasada Land & Cattle Company, Inc. . . ."</u> (emphasis added).

The Agreed Judgment then lists four pages of property descriptions, including the Mineral Interests previously transferred to Mestena. At the time of the Agreed Judgment, the Mineral Interests at issue here were not in the name of Harry Risken, or the Risken

Family Trust, or Atravasada Land & Cattle Company, Inc., but were recorded, pursuant to the First Sale Order, in the name of Mestena.

**H. The Risken Defendants Subsequent State Court Suit**

The Bankruptcy case of Atravasada was finally closed by order dated October 26, 2001.  On October 31, 2005, fourteen years after the First Sale Order, Glenn Westergren and the Risken Family Trust sued Mestena in State District Court in Jim Hogg County alleging Mestena's trespass and theft of the Mineral Interests conveyed in the First Sale Order. Mestena and Mestena Unproven,Ltd., as plaintiffs in this adversary proceeding, brought suit against all of the original parties to the First Sale Order, to declare the rights of the Mestena Plaintiffs to the Mineral Properties. Judge Alex Gabert of the 229th District Court, Jim Hogg County, Texas, abated the State Court Suit on February 23, 2007, after determining that this Bankruptcy Court is the appropriate court to address the issues between the parties.

## III. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that, as a matter of law, the movant is entitled to judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)( "[T]he substantive law will identify which facts are material."); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  Only disputes about material facts will preclude the granting of summary judgment. *Anderson,* 477 U.S. at 248, ("[T]he substantive law will identify which facts are material."). In a motion for summary judgment, the burden is on the movant to prove that no genuine issue of material fact exists. *Latimer v. Smithkline & French Lab.*, 919

F.2d 301, 303 (5th Cir. 1990). If the non-movant bears the burden of proof at trial, the movant for summary judgment need not support the motion with evidence negating the opponent's case; rather, the movant may satisfy its burden by showing that there is an absence of evidence to support the non-movant's case. *Id.; Little,* 37 F.3d at 1075.

Once the movant makes this showing, the burden shifts to the non-movant to show that summary judgment is not appropriate. *Little*, 37 F.3d at 1075 (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 325(1986)). "This burden is not satisfied with 'some metaphysical doubt as to the material,' . . . by 'conclusory allegations,' . . . by 'unsubstantiated assertions,' or by only a 'scintilla of evidence." *Id.* (quoting *Matsushita Elect. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986)). Rather, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (*quoting* FED. R. CIV. P. 56(e)).  In determining whether a genuine issue for trial exists, the evidence must be sufficient such that a reasonable jury could return a verdict for the non-movant. *Anderson,* 477 U.S. 242 at 248; *Munoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000).

## IV. DISCUSSION

In order to succeed in this lawsuit, the Risken Defendants must prove the following:

1.   The unrecorded Risken Mineral Deed from Atravasada to Harry Risken dated February 20, 1979 is valid.

2.   Recording of the Risken Mineral Deed post-petition, following appointment of a chapter 11 trustee and without court approval or lifting the automatic stay was valid and constitutes a transfer of estate property.

3.   The First Sale Order of the Mineral Interests from the Atravasada bankruptcy estate to Mestena was invalid or ineffective to transfer the Mineral Interest to Mestena.

4.   The Agreed Judgment transferred title out of Mestena.

5.   Even if all the above is proven, that the conduct of the Debtor, its predecessors, and its successors, does not estop the Risken Defendants from claiming ownership.

### A. THE UNRECORDED RISKEN MINERAL DEED FROM ATRAVASADA TO HARRY RISKEN DATED FEBRUARY 20, 1979 IS VOID AS TO SUBSEQUENT CREDITORS OR PURCHASERS.

Under Texas law, "[a] conveyance of real property or an interest in real property … is void as to a creditor or to a subsequent purchaser for a valuable consideration without notice unless the instrument has been acknowledged, sworn to, or proved and filed for record as required by law." Texas Property Code, §13.001(a); *Omohundro v. Jackson*, 36 S.W. 3d 677, 681 (Tex.App.- El Paso 2001, no writ). On March 17, 1981, when Gary Knostman was appointed Chapter 11 Trustee, he had the rights and powers of a creditor and a bona fide purchaser of real property. 11 U.S.C. §544(a). The uncontroverted evidence demonstrates that the Risken Mineral Deed was not recorded at the time of the Trustee's appointment. Accordingly, the unrecorded Risken Mineral Deed was void as to the Trustee.

### B. RECORDATION OF THE RISKEN MINERAL DEED POST-PETITION VIOLATED THE AUTOMATIC STAY, IS VOID, AND SHOULD NOT BE VALIDATED.

An attempt to transfer real property in the State of Texas in violation of the automatic stay is void, not voidable. *See, e.g. Continental Casing Corp. v. Samedan Oil Corp.,* 751 S.W.2d 499, 501 (Tex. 1988) ["An action taken in violation of the automatic stay is void, not merely voidable." *Stephens v. Hemyari*, 216 S.W.3d 526, 529 (Tex.App.-Dallas 2007, n.w.h.) [A foreclosure sale that occurs during the automatic stay is void and passes no title.]; *Oles v. Curl,* 65 S.W.3d 129, 132 (Tex.App.-Amarillo 2001, no pet.). The uncontroverted evidence demonstrates that Harry Risken recorded the

Risken Mineral Deed on March 15, 1982, over a year and a half after the bankruptcy was filed and nearly one year after the appointment of the Trustee. Not only was the Risken Mineral Deed recorded without Court approval or relief from the automatic stay, the recordation was never disclosed to the Court or the Trustee.

The Fifth Circuit Court of Appeals has also held that actions taken in violation of the automatic stay, while voidable under Fifth Circuit case law, must be validated once discovered in order to be effective. *Matter of Coho Resources, Inc*., 345 F.3d 338, 343-44 (5th Cir. 2003). In the case at bar, the Risken Defendants not only never sought validation of their stay violation, they never disclosed the filing of the Risken Mineral Deed at all until the filing of the instant Adversary Proceeding. The Fifth Circuit recently held that "the retroactive validation of actions taken in violation of an automatic stay is reserved to the discretion of bankruptcy courts, and they are cautioned to use this discretion sparingly because of the adverse impact that validation could have on other creditors who honored the stay." *In re Brown*, 178 Fed.Appx. 489, 2006 WL 1210789 (5th Cir. 2006), *cert. den* 127 S.Ct. 555 (2006).

Therefore, even if the recordation of the Riskin Mineral Deed in violation of the automatic stay were only voidable, the uncontroverted evidence establishes that Plaintiffs are entitled to a finding that the recordation is void and should not be validated. Harry Riskin's actions were calculated to hide assets from the bankruptcy court in an attempt to pass assets through the system outside the operation of the law. Harry Risken was tried and convicted of bankruptcy crimes including the hiding of assets. The Mineral Properties were valuable assets of the estate. The current defendants are the successors of

Harry Riskin and are bound by his conduct. Moreover, these defendants participated in the estate sale to Mestena, driving up the price and concurring in the sale.

Plaintiffs met their burden of proof to show that this court should void the recordation and decline to validate it. Despite the overwhelming uncontroverted evidence of Harry Risken's misconduct, the Risken Defendants' participation, and the enormous harm to Mestena and the estate if the recordation is validated, the Risken Defendants failed to bring forth any evidence to support their claim for validation of the recordation. In fact, in this case it is difficult even to postulate a "metaphysical doubt" or an "unsubstantiated assertion" as to the grounds for validating the recordation. This court finds that to the extent the February 20, 1979, post-petition recordation of the Risken Deed is voidable, such recordation should not be validated and should be declared void.

Moreover, once a Trustee is appointed, no third party may transfer title or any rights to estate property – that right is wholly vested in the Trustee and the bankruptcy court. As noted in *Commodity Futures Trading Com'n v. Weintraub*, 471 U.S. 343, 352-53 (1985):

> In contrast, the powers of the debtor's directors are severely limited. Their role is to turn over the corporation's property to the trustee and to provide certain information to the trustee and to the creditors. §§ 521, 343. <u>Congress contemplated that when a trustee is appointed, he assumes control of the business, and the debtor's directors are "completely ousted."</u> See H.R.Rep. No. 95-595, pp. 220-221 (1977).

--*Id.;* [Emphasis added.], *See, also*, *Bardes v. First Nat. Bank*, 178 U.S. 524, 526 (1900) [the trustees, upon their appointment and qualification, are vested by operation of law with the title of the bankrupt, as of the date when he was adjudged a bankrupt, in all his property including property transferred by him in fraud of his creditors, . . ."]; *In re J.A.V. Ag., Inc*., 154 B.R. 923, 927 (Bankr. W.D. Tex. 1993) [The Bankruptcy Code requires the authority of a debtor in possession to terminate upon conversion (appointment of a Trustee)]; *In re Wisconsin Cent. Ry. Co*., 94 F.Supp.165,167 (D.Minn. 1950) ["Concededly, the debtor corporation now is in reality a mere shell. The trustee whom the Court has appointed, not the debtor corporation, possesses the corporate assets and carries

on the corporation's railroad affairs. Neither the corporation nor its directors control the debtor's estate".]

As noted above, the Risken Mineral Deed was invalid as to the Trustee because he is a bona fide purchaser.  The Mineral Interests therefore remained property of the estate of Atravasada and only the Trustee could validly transfer title to estate assets. "A debtor has no power to transfer estate property." *In re Grotjohn*, 376 B.R. 496, 499 (N.D.Tex. 2007). "Only the Trustee, as the representative of the estate, …[has] the power to sell property of the estate." *Id.*

Likewise, Harry Risken's attempt to transfer the Mineral Interests from himself to the Risken Family Trust via the Trust Mineral Deed was invalid because the Mineral Interests remained property of the estate.  Harry Risken had no authority to transfer estate assets, nor did he own the Mineral Interests at the time of the Trust Mineral Deed because the prior Risken Mineral Deed was void.

### C. THE FIRST SALE ORDER VALIDLY TRANSFERRED THE MINERAL INTERESTS TO MESTENA

Prior to the Bankruptcy Code of 1978, the bankruptcy court was considered the seller of a bankrupt estate's property. *In Matter of Met-L-Wood Corp.,* 861 F.2d 1012, 1016 (7th Cir. 1988); *cert. den*. 490 U.S. 1006 (1989). The enactment of section 363 placed the trustee or debtor in possession in position of seller and bankruptcy court involvement occurred through notice and hearing requirements. *Id.* Thus all sales of estate assets are made through the authority granted in 11 U.S.C. §363. Sales by a trustee outside the ordinary course of the debtor's business are made under 11 U.S.C. §363(b)(1), while sales allowed under the ordinary course of business are under 11 U.S.C. §363(c)(1) and do not require notice or a hearing.

Acting on advice of counsel, the Trustee believed that notice and a hearing was preferable for the sale of the Mineral Properties. Notice was provided to the parties on the Debtor's service list. Although the Risken Defendants filed an objection, one basis being lack of notice as a party in interest, they clearly received notice of the hearing and an opportunity to participate. The Court set the matter for hearing. The Risken Defendants disputed the sales price of the Mineral Properties, but at no time did they dispute the Estate's ownership of those mineral interests, nor was there any disclosure of the Risken Mineral Deed or the Trust Mineral Deed. In any §363 hearing, an "entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest." 11 U.S.C. § 363(p). As the Court in *Matter of Met-L-Wood Corp*. stated:

> The …..order is appealable as a final order under 28 U.S.C. § 158(d). No appeal from Judge McCormick's order was taken, however; and after the time for appeal had lapsed, the order could not be attacked in a new lawsuit brought by a party to the sale proceeding or by a successor to that party or by anyone else so far identified with such a party as to be classified as being in privity with him; such a suit would be barred by res judicata. The only other remedy would be a motion to vacate the judgment order under Rule 60(b).

> The unsecured creditors who appeared at the two hearings before Judge McCormick and urged him first to allow bids for Met-L-Wood's assets to be solicited and then to approve Thompson's bid were parties to the sale proceeding. They are therefore barred by res judicata from bringing a lawsuit to nullify the sale.

--*Id.* at 1016 (citations omitted).

This is precisely what occurred in this case. The Risken Defendants appeared before this Court, complained that the sales price was too low and consented to the § 363 First Sale Order at a higher price. At no time did they assert an ownership interest, although the Trust Mineral Deed was recorded two years prior and the Risken Mineral

Deed was recorded nine years earlier. The First Sale Order is a final, non-appealable

order entitled to preclusive treatment as discussed below.

**D. INCLUSION OF THE MINERAL INTERESTS IN THE AGREED JUDGMENT WAS A MISTAKE AND DID NOT TRANSFER TITLE OUT OF MESTENA.**

As a matter of law and the plain reading of the Agreed Judgment entered by this

Court, the language precludes a claim that the Agreed Judgment transferred the Mineral

Interests to the Risken Defendants. The Agreed Judgment only purports to transfer

mineral interests specifically described:

> ". . . as to the following described mineral interests <u>in the name of Harry Risken,the Risken Family Trust or Atravasada Land & Cattle Company, Inc. . . .</u>" (emphasis added).

It is clear from this language that the Agreed Judgment did not operate to transfer

the title to the Mineral Properties then held "in the name of . . ." (quoting the language of

the Agreed Judgment) the Mestena Plaintiff(s). The Agreed Judgment does not purport to

transfer any title from Mestena to the Risken Defendants or the estate, nor address any

title that was, at that time, held in the name of Mestena.

This reading is accurate, logical, and consistent with what the parties to the

Agreed Judgment and the Court actually knew at the time - - that the Mineral Properties

were not "in the name of (the Risken Defendants) or Atravasada (the Debtor)." The

parties could not have intended to divest Mestena of title because they voluntarily

participated in the First Sale Order conveying such title to Mestena and did not ever

attempt to make the Mestena Plaintiffs parties to the Agreed Judgment. Thus, any reading

of the language of the Agreed Judgment as an order divesting the title of Mestena is

counterintuitive.

It is a matter of judicial notice that the Bankruptcy Court does not intend to divest a party of title in a subsequent proceeding where they are not a party. In *Tootle v. Sec'y of Navy*, 446 F.3d 167, 172-73 (D.C.Cir. 2006) the District Judge issued an order that purported both to dismiss and to transfer the action. The appellate court held that, given this unmistakable indicium of the District Court's primary intent, the order effectuated a dismissal rather than a transfer, reasoning that, having dismissed the action and set the stage for an immediate appeal, "the trial court was without authority to transfer [it]." *Id*. at 173. *See, also, Subsalve USA Corp. v. Watson Mfg., Inc.*, 462 F.3d 41, 46-47 (1st Cir. 2006) ["The record presents unmistakable signs of the district court's abiding intent. That distinction is critically important."]

Here this Court entered both orders, and the intent must be presumed to not divest title previously conveyed to Mestena pursuant to a final order, by subsequently ordering that same title to another party, without any due process to Mestena. The distinct language of the Agreed Judgment supports the parties' actual or imputed intent, the Bankruptcy Court's clear intent, and recognizes that the Second Agreed Order could not constitutionally divest Mestena of its title without notice and hearing.

Even if an ambiguity exists here, this Court has jurisdiction to resolve any such ambiguity. As noted in *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261 at 265 (3rd Cir. 1991), "[i]t is doubtful that an estate can be fully administered, consistent with Rule 3022, until conflicting orders are reconciled." In *Marcus Hook* the appellate court found that the bankruptcy court had jurisdiction to resolve a dispute over two conflicting orders issued by the bankruptcy court. One order approved the sale of a piece of property free of any liens. A second order then reimposed a lien after the sale. *Id*. at 262.

The Third Circuit in *Marcus Hook* held that the bankruptcy court should have exercised subject matter jurisdiction over the adversary proceeding brought by the purchaser of debtor's assets to resolve any ambiguity created by the court's conflicting orders (i.e., as to whether sale was free and clear of encumbrances) and should not have declined to exercise jurisdiction on ground that it was impractical to resolve ambiguity years after sale had occurred. In a footnote, the court cited to several supporting cases:

> It is well settled that a bankruptcy court has the power to vacate or modify its orders, as long as it is equitable to do so." *Big Shanty Land Corp. v.Comer Properties, Inc*., 61 B.R. 272, 282 (N.D.Ga.1985). *See, e.g., In re Texlon Corp*., 596 F.2d 1092, 1101 (2d  Cir.1979) ("There is a practical utility in the application of a rule which permits the vacation or modification of bankruptcy orders where subsequent events presented during administration demonstrate the necessity therefor; and to do so would not be inequitable. *(citation omitted)*)); *In re Radco Merchandising Services, Inc*., 111 B.R. 684, 689 (N.D.Ill.1990)("Like a court of equity, the bankruptcy court has the power to amend, modify, or vacate its . . . orders.").

-- *Marcus Hook* at 265. *See also, In re Olsen*, 861 F.2d 188, 189 (8th Cir.1988) (stating that bankruptcy courts have general authority to change terms of their own orders when equity so requires).

Thus, interpreting these two orders to accomplish what is clearly the intent of the proceedings is an authorized process for the Bankruptcy Court. Every case cited also relies on the equities. Here there could be no equity favoring a finding that the Agreed Judgment divested a non-party of title. In this case, this Bankruptcy Court has the undisputed jurisdiction and authority to construe the two orders so as to reconcile any conflicting arguments or positions, and just as in *In re Marcus Hook*, to resolve any ambiguity.

Finally, to the extent correction of the Agreed Judgment is necessary, the Court finds that inclusion of the Mineral Interests in the lengthy list of property being conveyed was

a clerical mistake. The Court never intended by entry of the Agreed Judgment to divest Mestena of the property rights it previously acquired though a bankruptcy sale procedure. A court may correct clerical mistakes in judgments at any time on its own initiative. Rule Rule 60(a), F.R.C.P., (made applicable here by Rule 9024, Fed.R.Bankr.Pro.).

"Rule 60(a) finds application where the record makes apparent that the court intended one thing but by merely clerical mistake or oversight did another." *Matter of West Texas Marketing Corp*., 12 F.3d 497, 503 (5th Cir. 1994), quoting, *Dura-Wood Treating Co. v. Century Forest Ind., Inc.*, 694 F.2d 112, 114 (5th Cir. 1982); see also, *Matter of Transtexas Gas Corp.,* 303 F.3d 571, 581 (5th Cir. 2002). "It is axiomatic that courts have the power and the duty to correct judgments which contain clerical errors or judgments which have issued due to inadvertence or mistake." *American Trucking Ass'ns v. Frisco Transp. Co.,* 358 U.S. 133, 145 (1958). The record in this case is clear - - title to the Mineral Interests was transferred to Mestena by order of this court entered in November, 1991. The later inclusion of the Mineral Interests in the Agreed Judgment was a clerical mistake which this court finds should be corrected pursuant to Rule 60(a), F.R.C.P.

**E. EVEN ASSUMING, *ARGUENDO*, THAT THE COURT IS INCORRECT IN ALL THE FINDINGS MADE ABOVE AND THE RISKEN DEFENDANTS MET THEIR BURDEN OF PROOF, THE CONDUCT OF THE DEBTOR, INSIDERS OF THE DEBTOR, AND ITS PREDECESSOR AND SUCCESSORS ESTOPS ANY CLAIM OF OWNERSHIP OF THE MINERAL INTERESTS.**

Even if the transfers to Harry Risken and the Risken Family Trust were valid, the subsequent conduct of the Risken Defendants prevents their success in this matter on equitable grounds. The key difference between equitable doctrines and the doctrines of claim and issue preclusion is that the equitable doctrines focus upon conduct, while the

claim and issue preclusion doctrines turn merely on the existence of adjudication. Two of

the more commonly applied equitable doctrines are equitable estoppel and judicial

estoppel. A basic difference between them is that the former contemplates reliance by the

party asserting estoppel, while the latter looks to whether a court has relied on a prior

inconsistent position.

### a. Equitable Estoppel Applies in this Case

Equitable estoppel functions primarily to thwart a litigant from achieving an

advantage by misleading another into action or inaction. Although there are a variety of

formulations of the basic elements of equitable estoppel, four elements are typical:

> (1) the party to be estopped must know the facts;
> (2) the party to be estopped must either intend that its conduct will be
> acted upon or act in a manner that the party asserting the estoppel has a
> right to believe it so intended;
> (3) the party asserting estoppel must be ignorant of the true facts; and
> (4) the party asserting estoppel must rely on the conduct to its injury.

- - *See, United States v. Ruby Co.*, 588 F.2d 697, 703 (9th Cir. 1978); *In re Vebeliunas*,
332 F.3d 85, 93-94 (2nd Cir. 2003); *In re Assoc'd Vintage Group, Inc.*, 283 B.R. 549,
567 (B.A.P. 9th Cir. 2002).

Every element of estoppel appears in this case – each of which are undisputed.

The Risken Defendants knew that the relief requested by Mestena and the estate through

the Trustee was to obtain full title to the Mineral Properties, and they also knew that they

had a mineral deed from Harry Risken to the same Mineral Properties. The Risken

Defendants expressly objected to the proposed sale and obtained more funds for the

benefit of the estate (to which they were insiders and ultimately beneficiaries as a plan

proponent) and thereafter expressly consented to the sale of the Mineral Properties.

Mestena had no knowledge of the adverse claim of the Risken Defendants and relied on

the resolution of their objection, and their express consent, in agreeing to pay the

purchase price and enter into possession of the property purchased.

### b. Judicial Estoppel Applies In This Case

Judicial estoppel encompasses an amorphous variety of different situations that

revolve around the concern for preserving the integrity of the judicial process. Its classic

application is the preclusion of inconsistent positions by a party to gain two distinct

advantages from the court. The Supreme Court, acting as a trial court under its original

jurisdiction in *New Hampshire v. Maine*, 532 U.S. 742, 749-51 (2001), imposed judicial

estoppel to estop a plaintiff from changing prior positions regarding its boundary with the

defendant. The decision explained that the application of judicial estoppel is typically

informed by whether there are "clearly inconsistent" positions, whether the first position

was accepted by a court so that acceptance of a second position would create the

impression that one of the courts was misled, and whether an unfair advantage or

detriment would result in the absence of an estoppel. *New Hampshire* at 750-51.

In the context of a bankruptcy case, judicial estoppel has particular ramifications.

The bankruptcy court is often forced to rely on the representations of the parties in

pleadings and Court appearances in the furtherance of a "speedy and efficient"

administration of a case. This fact places far greater importance on the accuracy of stated

or pled positions of parties. The consequence may be that the debtor is prevented from

enjoying unscheduled property, estopped from claiming exemptions, or estopped from

objecting to claims in a reopened case. *See, Hamilton v. State Farm Fire & Cas.Co.*, 270

F.3d 778, 783 (9th Cir. 2001); *In re Assoc'd Vintage Group, Inc.*, 283 B.R. 549, 566

(B.A.P. 9th Cir. 2002); *In re Mahan,* 104 B.R. 300, 300-01 (Bankr. E.D. Cal. 1989).

"Courts employ several factors in determining whether to apply the doctrine [of judicial estoppel]: (1) whether the party's later position is clearly inconsistent with its earlier position; (2) whether the party has succeeded in persuading a court to accept that party's earlier position; (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *In re Ark-La-Tex Timber Co, Inc*. 482 F.3d 319, 332 (5th Cir. 2007); *See also, New Hampshire, supra* at 750-51.

Additionally, the doctrine of judicial estoppel will preclude affidavits in response to a summary judgment that are clearly inconsistent with the legal position taken in earlier proceedings upon which relief was granted. *See, e.g., Khan v. Hakim*, 201 Fed.Appx. 981, 2006 WL 2870969 (5th Cir. 2006).

In *In re Superior Crewboats, Inc.,* 374 F.3d 330 (5th Cir. 2004), Chief Judge Edith Jones takes direct aim at the events of this case that clearly apply judicial estoppel to the outcome. In *Superior Crewboats*, the Debtor was allegedly injured on a boat owned by Superior Crewboats. *Id*. 332-333. A year after the alleged injury, the Debtor and his wife filed a bankruptcy case. *Id*. 333. The Court first noted that:

> [a]s a condition of bankruptcy, the (Debtors) were required to report, under penalty of perjury, the existence of pending litigation or potential law suits. . . .The Debtors are also obliged to update their schedules as necessary to assure full disclosure. (The Debtors) schedules represented that they had no pending or potential lawsuits.

--*Id*. at 333.

The Debtors then filed their personal injury lawsuit during their bankruptcy case, but did not obtain service or amend their schedules to disclose the lawsuit for over six months. Later the Debtors did orally disclose the lawsuit to their trustee at the § 341 first meeting

of creditors but inaccurately informed the creditors that the lawsuit had been barred by limitations ("prescribed" under Louisiana law terms). *Id.* at 333. As a result, the trustee then filed a "no asset" report, and the Bankruptcy Court granted the Debtors "a 'no asset' discharge". *Id.* at 333.

In the subsequent State Court lawsuit brought by the Debtors against Superior Crewboats, the Debtor filed pleadings suggesting that limitations had not run. The trustee in the prior bankruptcy case moved to reopen the bankruptcy case and to substitute as the party-plaintiff. *Id.* In response to both the Debtor's pleadings and the trustee's attempt to intervene, Superior Crewboats sought dismissal based on judicial estoppel by motion for summary judgment and a Rule 17(a) motion. Chief Judge Jones framed the issue as follows:

> The threshold, and as it turns out dispositive, question in this appeal is whether judicial estoppel bars the appellees from pursuing Mr. Hudspeath's personal injury claim. Judicial estoppel is a common law doctrine that prevents a party from assuming inconsistent positions in litigation. 'The purpose of the doctrine is to protect the integrity of the judicial process by preventing parties from playing fast and loose with the courts to suit the exigencies of self interests.' Importantly, because judicial estoppel is designed to protect the judicial system, not the litigants, detrimental reliance by the party opponent is not required.

--*Id.* at 334 (citations omitted).

*Superior Crewboats* first notes that "federal law applies to Superior's judicial estoppel argument (in the state court) which arose within the context of the (Debtors) bankruptcy petition." *Id.* at 333. That law, just as Texas state law, has "three particular requirements: (1) the party is judicially estopped only if its position is clearly inconsistent with the previous one; (2) the court must have accepted the previous position; and (3) the non-

disclosure must not have been inadvertent." *Id*. at 334. Chief Judge Jones discusses each of these elements:

### i.        Is the Position Clearly Inconsistent From the Prior Position?

The Court in *Superior Crewboats* noted that the "omission of the personal injury claim from their mandatory bankruptcy filings is tantamount to a representation that no such claim existed." *Id*. at 335. (*citing In re Coastal Plains, Inc.* 179 F.3d at 210 (5th Cir 1999). Referencing exactly the conduct of the debtor, Chief Judge Jones addresses prong one of the test:

> Now, however, the (Debtors) contend before the state court and in the limitation proceeding, that the personal injury claim is viable and worth $2.5 million. Such blatant inconsistency readily satisfies the first prong of the judicial estoppel injury.

--*Id*. at 335.

It is irrefutable that the Risken Defendants objected to the sale of the Mineral Interest and, upon payment of a higher purchase price, expressly consented to the sale of the Mineral Interest. Furthermore, the Risken Defendants specifically acknowledged the conveyance to Mestena and the receipt of consideration in both of their disclosure statements. The Risken Defendant's position in the current litigation is totally inconsistent with their prior position throughout the Atravasada bankruptcy.

### ii.       Did the Court Accept the Previous Inconsistent Position?

As to prong two, it was clear to the Court in *Superior Crewboat* that "the bankruptcy court adopted (the Debtors) contention that the personal injury claim was prescribed, noting that ". . . adoption does not require a formal judgment; rather it only requires 'that the first court has adopted the position urged by the party, either as a

preliminary matter or a part of a final disposition.'" *Id.* at 335. In *Superior Crewboats*, "the bankruptcy court issued a 'no asset' discharge, thereby adopting the (Debtors') position until Superior's actions forced the (Debtors) to recede in favor of the trustee." The same res judicata impact occurs upon entry of a Chapter 11 Plan confirmation order. See *In re National Gypsum Co.*, 208 F.3d 498 (5th Cir. 2000), *cert. den.* 531 U.S. 871 (2000); *Republic Supply v. Shoaf*, 815 F.2d 1046, 1053 (5th Cir.1987). Prong two applies to the Risken Defendants because they received a higher price for the Mineral Properties from Mestena without disclosing any other alleged claim and were allowed to prosecute their Plan of Reorganization after the court approved their Disclosure Statement.

### iii.    Was the Non-Disclosure Inadvertent?

*Superior Crewboats* outlines the specific proof that would be required to overcome the presumption that the conduct was not inadvertent, holding in that case that even the disclosures that did ultimately occur in the bankruptcy case were insufficient to avoid judicial estoppel. *Id* at 335. Quoting *Coastal Plains* on the issue:

> [T]he debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment.

-- *Id.* at 335, quoting *Coastal Plains* at 210.

In this case there is no question that the Risken Defendants had both actual knowledge of the their claim to the Mineral Properties and that their failure to disclose was not inadvertent.

The Risken Defendants have taken diametrically opposed positions before this Court in respect to the Mineral Properties and the sale of the Mineral Properties to Mestena. The Risken Defendants obtained a greater purchase price from Mestena by

objecting to the sale price while never mentioning that they claimed title to the very property over which they were negotiating the sales price. The Risken Defendants never mentioned that they were asserting ownership of the Mineral Properties as a result of the Harry Risken conveyance, likely because had they mentioned their claim to title, that issue would have been joined in the proceeding and raised questions by the Trustee as to other claims to title the Risken Defendants may have. By remaining silent, the Risken Defendants obtained two distinct advantages: (i) they doubled the purchase price paid to the estate from which they directly benefited; and (ii) they avoided legal action by the Trustee that could have disclosed a number of other secret transactions the Risken Family Trust had with Harry Risken.

The cornerstone of judicial estoppel is to prevent a litigant from setting up the system to their advantage, and, by simply reversing their story in another proceeding, attempting to obtain an unfair advantage. That is exactly what has occurred here. Several years after objecting in this Court to a sale on the basis of price, then consenting to the sale when the price was increased, the Risken Defendants came back into Court and allegedly obtained an order purporting to grant them title to the same property. Judicial estoppel clearly applies in this case.

This policy also drives the rule addressed in *In re Olsen*, 861 F.2d 188, 189 (8th Cir. 1988):

> Bankruptcy courts have general authority to change the terms of their own orders when equity so requires. [citing *Wayne United Gas Co. v. Owens-Illinois Gas Co*., 300 U.S. 131, (1937); *Matter of Cada Investments, Inc*., 664 F.2d 1158, 1161 (9th Cir.1981); Bankruptcy Rule 924, Title XI, U.S.C. Appendix (1982).]

-- *Id*.

The policy particularly applies to "agreed" orders or stipulations among parties

that are not the subject of actually litigated issues:

> …a court may, within its equitable powers, set aside an agreed order or
> stipulation, but it may do so only where "[a] showing of special
> circumstances, . . . to prevent manifest injustice.03/28/2008

- - *In re Atlas Carriers, Inc*. 2003 WL 21397832 (Bankr E.D. Ark 2003). *See also In re Radco Merch. Servs., Inc.*, 111 B.R. 684, 689 (N.D.Ill. 1990) ("like a court of equity, the bankruptcy court has the power to amend, modify, or vacate its earlier order."); *In re Joubert*, 411 F.3d 452, 455 (3rd Cir. 2005) (following *In re Morristown & Erie R.R.Co.*, 885 F2d 98, 100 (3rd Cir. 1989)); *see also In re Jamo*, 283 F.3d 392, 403 (1st Cir. 2002).

The title transferred by the First Sale Order could not have been transferred again by the

Second Agreed Order and the entry of the Second Agreed Order was, at best, an

inadvertent error of the parties to that order and so inconsistent with the First Sale Order

as to justify barring the enforcement by judicial estoppel, or justifying the modification of

the Second Agreed Order to reflect the omitting of the Mineral Properties.

## F. PRECLUSIVE EFFECT ARISING FROM THE DEBTOR'S PLAN CONFIRMATION VOIDS THE CLAIM OF THE RISKEN DEFENDANTS

The Risken Defendants are also bound by the preclusive effect of the confirmed

Amended Plan of Reorganization and the approval of the Amended Disclosure Statement.

The Risken Defendants, as privies, proposed a plan of reorganization and prepared and

published a disclosure statement required by the Bankruptcy Code. The statements and

information contained in the disclosure statement confirmed and approved the sale of the

Mineral Properties to Mestena. Nowhere in the disclosure statement did the plan

proponents (Risken Defendants) provide any disclosure of any of the potential events

resulting in the Second Agreed Order:

> a. the disclosure statement did not disclose that the estate contended that it
> did not have good title to convey to Mestena when it executed and
> delivered its Special Warranty Deed to Mestena;

b. the disclosure statement did not discuss or disclose that the Risken Family Trust claimed title to property that had been conveyed by Special Warranty Deed to Mestena;

c. the disclosure statement did not discuss or disclose that the Debtor may reserve its claims to title to the Mineral Properties in any respects;

d. the disclosure statement did not discuss or disclose that the Debtor may, upon any event, agree to convey any part or portion of the title it conveyed to Mestena by Special Warranty Deed, to the successors in interest of Harry Risken.

First, the "[b]ankruptcy code and Rules impose upon debtors an express, affirmative duty to disclose all assets, including contingent and unliquidated claims. . . . The duty to disclose is continuous." *Superior Crewboats, supra.* at 335 (emphasis in original). This includes disclosure in connection with a Chapter 11 Plan. ["[o]nce a bankruptcy plan is confirmed, it is binding on all parties and all questions that could have been raised pertaining to the plan are entitled to res judicata effect."]

Failure to disclose a claim or cause of action, known to the Debtor at the time of confirmation of the Debtor's chapter 11 plan, constitutes a bar to the bringing of such claim after an order of confirmation of the plan. The Trustee's Disclosure Statement (approved by the Court) and Trustee's Plan of Reorganization (also approved by the Court) also omitted the above discussed disclosures.

A court may treat an omission as an intentional assertion when confirming a plan. *Hay v. First Interstate Bank of Kalispell, N.A.,* 978 F.2d 555, 557 (9th Cir. 1992). This is reflected in the legion of cases applicable to confirmation of a Chapter 11 Plan. *See, e.g Prudence Realization Corp. v. Ferris*, 323 U.S. 650 (1945); *In re Robert L. Helms Constr. & Dev. Co., Inc.*, 139 F.3d 702, 704 (9th Cir.1998); see also, *Stoll v. Gottlieb*, 305 U.S. 165, 170, (1938) ("[a] confirmed reorganization plan operates as a final

judgment with res judicata effect.");  *In re Varat Enters., Inc.,* 81 F.3d 1310, 1315 (4th Cir.1996) ["A bankruptcy court's order of confirmation is treated as a final judgment with res judicata effect," binding the parties by its terms and precluding them "from raising claims or issues that they could have or should have raised before confirmation."]; *In re Enewally*, 368 F.3d 1165, 1172 (9th Cir. 2004) (quoting *In re Pardee*, 193 F.3d 1083, 1086 (9th Cir. 1999).

Based upon the authority cited above, the Debtor and its privies – the Risken Defendants as plan proponents, owners of the Debtor, and insiders to the Debtor, cannot avoid the preclusive effect of (1) the disclosure statement and plan of reorganization they proposed, (2) failure to disclose claims or causes of action which they intended to bring, or (3) for which they had actual notice. Their claims are therefore barred.

**G. THE RISKEN DEFENDANTS' CLAIM TO THE MINERAL INTERESTS IS BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS OR LACHES**

The Risken Defendants claim to title to the Mineral Properties is barred by the applicable statute of limitations or the equitable doctrine of laches. The recorded deed from the Trustee to Mestena gave the Risken Defendants at least constructive knowledge that any interest they had in the property was at stake. *Mooney v. Harlin*, 622 S.W.2d 83, 85 (Tex. 1981). In this case, the Risken Defendants had actual knowledge of the recorded deed. Any suit for setting aside, or for reformation of a deed is covered by the four-year statute of limitations. *Brown v. Havard*, 593 S.W.2d 939 (Tex. 1980). The four-year statute of limitations does not begin to run until the cause of action is discovered or, by reasonable diligence, should have been discovered. *Brown v. Havard* at 944; *McClung v. Lawrence*, 430 S.W.2d 179 (Tex. 1968). Of course, here, the recording of the Mestena

deed was immediate and the Risken Defendants had actual notice of the entire transaction.

The Risken Defendants knew, and in fact participated in the judicial process that resulted in the Mestena Plaintiffs obtaining their title by Special Warranty deed. The First Sale Order occurred in November 1991. The Risken Defendants then waited more than 14 years to assert a claim they knew they had on the day of the delivery, or recording, of the Mestena Plaintiffs title. Notwithstanding any statute of limitations, sitting on one's rights, with actual knowledge, for 14 years is inequitable. The Risken Defendants had 4 years to contest that title directly and no legal right at all to contest it through collateral attack.

If a party seeking to establish a title brings a stale demand, an exception on this ground does not affect the title. *Shepard v. Cummings' Heirs*, 44 Tex. 502, 505 (1876). A stale demand is one that, although known to a party, is not brought within a reasonable time. "Laches, in legal significance, is inexcusable delay in asserting an equitable right resulting in injury to the opposing party." *Teledyne Isotopes, Inc. v. Bravenec*, 640 S.W.2d 387, 390 (Tex. App.-Houston [1st Dist.] 1982, writ ref'd n.r.e.), citing *San Antonio River Auth. v. Garrett Brothers*, 528 S.W. 2d 266 (Tex.Civ.App.-San Antonio 1975, writ ref'd n.r.e.). As an example, an action in trespass to try title was not barred by laches where failure to act within the four-year statute of limitations was satisfactorily explained, suit had been promptly filed after that actual knowledge was obtained, and third-party rights had not intervened. *O'Neal v. Ball*, 351 S.W.2d 670 (Tex. Civ.App.-Waco 1961, writ ref'd n.r.e.). Unlike the situation in *Teledyne*, where no assertion of

interest was made to trigger suit to quiet title until an oil rig was set up 20 plus years following an invalid deed, any asserted claim to title was fully known to the Risken Defendants for at least 14 years. Thus, their action is barred by laches. Here the Risken Defendants knew, from the time of the recorded deed to the Mineral Properties, that it had a claim to title.

## V. CONCLUSION

Not only did the Risken Defendants fail to demonstrate as a matter of law that their claim to title is valid, their conduct involves inequity, deception, and abuse of the bankruptcy system. The pedigree of title from Harry Risken, received only months after his felony conviction for bankruptcy fraud, conveying to his mother's trust (which he settled with the Mineral Properties stolen from the estate,) reeks with fraud. The Risken Family Trust's conduct is no better: waiting seven years to record their claim from Harry Risken, taking advantage of the confusion and problems arising from the untimely death of the bankruptcy Trustee and complete lack of candor with this court, all illustrate that no equities favor the Risken Defendants.

On the other hand, the bankruptcy system is premised on the ability to exercise speed and efficiency in the administration of the estate and liquidate assets free from future claims and litigation. Mestena did all the system requires, believed in the representations of the bankruptcy Trustee, and the representations (and silence when there was a duty to speak) of the Risken Defendants, and paid fair and full consideration for the purchase of the Mineral Properties. The First Sale Order, the confirmed Amended Plan of Reorganization and the conduct of the Risken Defendants clearly justify precluding and barring any claim to title to the Mineral Properties, estopping such claims

36 / 37

as clearly abusive, and imposing either a statute of limitations or a finding of laches to prevent further litigation.

For the reasons stated above, the Court finds that there are no genuine issues of material fact and Summary Judgment should be granted in favor of the Mestena Plaintiffs on their declaratory judgment action. Counsel for Mestena shall prepare a final judgment and submit it to the court.

Dated: 03/28/2008

_____
RICHARD S. SCHMIDT
United States Bankruptcy Judge